HAIRSTON v. HAIRSTON.

1. EARNINGS OF MARRIED WOMAN prior to 1887 belonged to her husband, and therefore a note and mortgage against the husband purchased by the wife with the proceeds of her own labor, and assigned to her, was thereby paid.

2. AFFIRMATIVE RELIEF AMONG CO-DEFENDANTS.—Under complaint to foreclose mortgage, junior judgment creditors were made parties defendant, who answered asking a sale, but did not serve their answers

on their co-defendant, the mortgagor. *Held*, that the mortgage hav-
ing been adjudged paid, the court could not properly direct a sale of
the premises to pay the judgments, such relief being beyond the scope
of the complaint; especially where the mortgagor is not found to be
insolvent.

3. FINDINGS OF FACT by master and Circuit Judge approved.

4. HUSBAND AND WIFE—FRAUD—PREFERENCES.—Dealings between hus-
band and wife should be clearly scrutinized, and a Court of Equity
will not aid a fraud. Nevertheless, where there is no proof of actual
fraud and no return of *nulla bona* in proof of the husband's insolvency,
the court will not disturb a mortgage given by the husband to his wife
in 1881 to secure an existing indebtedness.

Before WALLACE, J., Laurens, September, 1890.

Action by Sarah C. Hairston against John S. Hairston and
others. The opinion states the case.

*Messrs. Ferguson & Featherstone*, for plaintiff.

*Messrs. Haskell & Dial, W. H. Martin, H. Y. Simpson*, and
*F. P. McGowan*, contra.

February 16, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. Sarah C. Hairston exhibited her com-
plaint in the Court of Common Pleas for Laurens County on the
11th day of August, 1889, against her husband, John S. Hair-
ston, and all persons who held judgments against him, as parties
defendants. Her complaint, as a first cause of action, alleged
that on the 23rd of December, 1881, John S. Hairston executed
to her his sealed note for $2,917, due at one day and for value
received ; that on the same day, in order to secure such sealed
note, John S. Hairston executed a deed by way of mortgage to
her for a tract of land in Laurens County, containing 460 acres;
that such mortgage deed was recorded in the office of the register
of mesne conveyance for Laurens County, on the 26th day of
December, 1881 ; that only ten dollars had been paid on such
sealed note ; and that she was entitled to judgment against de-
fendant, John Hairston, for the amount due on the sealed note
less the ten dollars credit, and for a sale of the mortgaged pre-
mises to satisfy her debt and interest and costs.

Her complaint, as a second cause of action, alleged that the defendant, John S. Hairston, on the 23rd December, 1881, executed his sealed note due at one day, with legal interest, for $375, to one James N. Bouchelle, and on the same day executed his deed by way of mortgage for a lot of land containing two-thirds of an acre, located at Martin's Depot, in Laurens County, unto said Bouchelle to secure the payment of the note held by him ; that such mortgage deed was duly recorded in the office of the register of mesne conveyance for Laurens County ; that no part of such sealed note had been paid ; that on the 5th day of September, 1883, the said Bouchelle had assigned and transferred his note and mortgage to the plaintiff; and that she was entitled to a judgment against the defendant, John S. Hairston, for the amount of principal and interest due on said sealed note, and for a sale of the mortgaged premises to satisfy her debt, interest, and costs ; and that all the defendants to this action, other than John S. Hairston, were judgment creditors of said John S. Hairston, who had liens upon the lands sought to be sold in her action junior to those held by her, and on that account were made parties defendant.

No answer was made by John S. Hairston. One other defendant, John S. Fairley & Co., answered, and the other judgment creditors of John S. Hairston were allowed to adopt the answer of John S. Fairley & Co. as their own. This answer, denying every allegation of the complaint except paragraph 6th, which alleged that all the defendants except Hairston were judgment creditors of the said John S. Hairston, who had liens upon the lands sought to be sold in this action, junior to the two mortgages of plaintiff, and for that reason were made parties defendant to the action, alleged that the judgment of John S. Fairley & Co. was duly entered in the court for Laurens County on the 4th October, 1883, for $147.35, inclusive of costs, and is still unpaid ; that at the date of the execution of the two notes and mortgages complained upon by the plaintiff, and since and now the defendant, John S. Hairston, was totally insolvent, such mortgages covering his entire property; that both notes and mortgages are wholly without consideration ; that said notes and mortgages were given to prefer said mortgagees to other credit-

ors of said John S. Hairston, and were given to hinder, delay, defraud, defeat, and cheat his creditors; that said notes and mortgages have been paid; that all such facts were well known to the plaintiff, who is the wife of the defendant, John S. Hairston, at the execution of the notes and mortgages; and that the notes and mortgages should be adjudged null and void, and ordered to be delivered up to be cancelled, and that the lands referred to should be ordered to be sold for a distribution amongst the judgment creditors of said John S. Hairston.

On July 25th, 1890, under an order therefor made by his honor, Judge Norton, all the issues of law and fact involved in the action were referred to C. D. Barksdale, master, who was required to report his findings to the Circuit Court, with leave to report any special matter. At the reference before the master, the plaintiff and her witnesses testified at length. The defendants introduced no testimony except certain judgment rolls as records of the Circuit Court for Laurens County, by which liens were established against John S. Hairston.

On the 13th September, 1890, C. D. Barksdale, Esq., as master, made his report to the court. The findings of fact by the said master were as follows: That the plaintiff and defendant, John S. Hairston, were married in 1858; that on the 23rd December, 1881, the defendant made the notes and mortgages as set up in the complaint, and that the mortgages were duly recorded in the office of the register of mesne conveyance for Laurens County on the 26th December, 1881; that the note for $2,917, made to the plaintiff, was the renewal of two notes given years prior to December, 1881, and at a time when John S. Hairston was not indebted to any one; that said note for $2,917 was made up of the principal and interest on notes given by John S. Hairston to the plaintiff for about $400, received by her in 1868, from the estate of her deceased mother, and a part of the sum of $3,000 in cash which was given to plaintiff for herself and her children by John S. Hairston from the proceeds of his cotton crop made in 1868; that the note and mortgage transferred by James N. Bouchelle to the plaintiff was procured to be transferred after it had been marked paid by Bouchelle, and that the consideration of such transfer to the plaintiff was money from her own earn-

ings at a time when the law made such earnings the property of the husband, to wit, on the 5th December, 1883; that the judgment of Dowie & Moise, amounting to $426.65, obtained on 7th March, 1882, and on a debt contracted 26th April, 1881, was now the property of the plaintiff; that the judgment of Purcell, Ladd & Co., amounting to $159.14, obtained on the 21st June, 1882, was founded on a debt contracted 15th January, 1882; that the judgment of W. H. Barrett, amounting to $146.68, obtained on the 21st June, 1882, was founded on a debt contracted 4th March, 1881; that the judgment of Smith N. Brickhouse, amounting to $135.42, obtained 21st June, 1882, was founded on a debt contracted on 28th September, 1881; that the judgment of Jacob Hetch, obtained on 3rd October, 1882, amounting to $78.02, was founded on a debt contracted 1st October, 1881; that the judgment of William Dervries & Co., amounting to $498.31, was founded on a debt contracted 5th April, 1881; that the judgment of Ramspeck and Green, obtained on 4th October, 1883, amounting to $344.35, was founded on a debt contracted on 16th May, 1881; that the judgment of Penneman & Bro., obtained on the 4th October, 1883, amounting to $142.96, was founded upon debt contracted 1st of June, 1881; that the judgment of John S. Fairley & Co., obtained on the 4th October, 1883, amounting to $207.40, was founded on a debt contracted 25th October, 1880; that the judgment of Samuel Martin & Co., obtained 5th March, 1885, amounting to $699.40, was founded on a debt contracted on the 16th May, 1883; that the judgment of Walton, Whann & Co., obtained on the 8th October, 1885, amounting to $157.-60, was founded on a debt contracted 15th and 16th May, 1881; that the judgment of Albert S. Fairley, obtained 8th October, 1885, amounting to $132.51, was founded on a debt contracted 26th September, 1881; that the judgment of James W. Harle, obtained 29th July, 1886, amounting to $638.64, was founded on a contract made on the 16th May, 1881; that the judgment of Cramer & Kerston, obtained 29th July, 1886, amounting to $69.22. was founded on debts contracted in 1885 and 1886.

As a conclusion of law, he found that the Bouchelle note and mortgage had been paid, and was not therefore a subsisting lien upon the lot of land at Martin's Depot, although the same was

paid by the plaintiff herself, because under the law as it existed in this State prior to the statute enacted in 1887, by which the earnings of a wife were declared to be her own property, all the earnings made by her personal services were the property of the husband, John S. Hairston. As a second conclusion of law, he found that the note for $2,917 and the mortgage securing the same were valid and subsisting; that it was perfectly competent under the laws of this State in December, 1881, for a husband to give a preference to the wife, if the indebtedness was *bona fide.* As a third conclusion, that under the facts established by the testimony in this action, there was no liability on the part of the plaintiff to account for the rent and profits of the plantation from the year 1881, when she took possession thereof, nor of the house and lot at Martin's Depot, of which she took possession in September, 1883.

He recommended the sale of the 460 acres tract of land to pay plaintiff's mortgage debt of $2,917 and the interest thereon. He also recommended the house and lot at Martin's Depot should be sold and the proceeds applied to the judgments established in this action, according to their rank respectively.

To this report both plaintiff and defendants excepted, but as the grounds of such exceptions will hereafter be stated, they are not set forth at this time, and at the hearing in the Circuit Court before Judge Wallace, on the 23rd day of September, 1890, the exceptions were all overruled and the report confirmed, save in one particular, viz., so much of the master's report as recommended the sale of the store house and lot at Martin's Depot, with a distribution of the proceeds of sale amongst the judgment creditors, was reversed. From this decree of Judge Wallace both parties, plaintiff and defendants, appeal.

We will first consider the ground of appeal presented by the plaintiff: Because the Circuit Judge erred in holding that the Bouchelle mortgage had been paid, and in not sustaining such debt and mortgage as still subsisting.

Between the date of the adoption of the constitution in April, 1868, and the 23rd day of December, 1887, when the act was passed, the second section of which declared, ''That all the earnings of a married woman shall be her own sepa-

rate estate, and shall be governed by the same provisions of law as apply to her other separate estate" (19 Stat., 819); "the earnings of a married woman, derived from her own labor and services, belonged to her husband." *Bridgers* v. *Howell*, 27 S. C., 425. So, therefore, as the money with which the plaintiff paid Bouchelle for the note and mortgage in question was the earnings derived from her own labor and services while she was the wife of the defendant, John S. Hairston, during this very period, it follows that the master and Circuit Judge committed no error here, and we must therefore overrule this ground of appeal.

We will next consider the fifteen grounds of appeal presented by the judgment creditors as a class : 1. Because, it is respectfully submitted, his honor, Judge Wallace, erred in finding that the debt of $2.917 was a renewal of old notes given by defendant Hairston to plaintiff. 2. Because he erred in not holding and finding that the consideration of said note and mortgage were the earnings of plaintiff's personal labor and services. 3. Because he erred in not holding that if defendant Hairston ever gave his wife any money, it was done with a view of defrauding future as well as past creditors, and that the alleged gift of $3,000 was given immediately upon his entering into a hazardous mercantile enterprise. 4. Because he erred in not holding that all of plaintiff's personal propety and all property that she derived from her mother was reduced to defendant's possession. 5. Because he erred in not holding that said note and mortgage was given in payment and extinguishment of all amounts due to plaintiff. 6. Because he erred in not holding and finding that said note and mortgage were without consideration and was paid. 7. Because he erred in not holding that said mortgage was given to hinder, defeat, and defraud creditors, and erred in holding that it was given merely as a security, whereas he should have held that it was given to unduly prefer plaintiff to other creditors. 8. Because he erred in not holding and finding that said defendant, John S. Hairston, was totally insolvent at the date of the execution of said note and mortgage. 9. Because he erred in not holding and finding that said mortgage was given carrying out a preconceived and premeditated agreement between plaintiff and said

defendant, whereby he was to secure her to the detriment of all future creditors, and in which fraud he was to be benefited. 10. Because he erred in not charging plaintiff with the rents and profits or rental value of the mortgaged premises from the execution of the mortgages. 11. Because he erred in not finding that the rents and profits, or the rental value of said place, was sufficient to extinguish said debt. 12. Because he erred in not crediting the mortgage debt or charging plaintiff with the rents and profits or rental value of said lands, to wit, four thousand pounds of lint cotton at ten cents per pound, for each year she had possession. 13. Because he erred in not charging her with rents for the store house, to wit, $75 per annum for the time she occupied the same, and in not crediting the mortgage or her judgment therewith. 14. Because he erred in finding that the Dowie & Moise judgment was owned by the plaintiff, and in not finding that it was paid. 15. Because he erred in sustaining plaintiff's second exception to master's report, and erred in not ordering the store house and lot sold.

We will dispose of the fifteenth exception first in order. It will be remembered that, although the master found the Bouchelle note and mortgage paid, yet he recommended that the house and lot be sold and the proceeds divided amongst the creditors. The Circuit Judge could not adopt this recommendation, and we do not see that he was in error, for the plaintiff by her complaint sought to have the house and lot sold to pay the Bouchelle note and mortgage. The defendant Hairston could not object to this, as he had executed such mortgage. But this was all by his failure to answer he admitted he was willing to have done, for this was the entire scope of the complaint. Against the mortgage he could have no claims of homestead. The effort to sell this lot of land, outside of a purpose to pay the mortgage, was the prayer of *defendants' answers*. Such answers were not served upon defendant Hairston, and it may well be doubted if such affirmative relief against a co defendant could be obtained at the instance of co-defendants when not within the scope of the complaint, especially in view of the fact that here there is no finding of Hairston's insolvency. We must overrule this ground of appeal.

Now, as to the other grounds of appeal, it will be seen that they all relate to findings of fact of the master, concurred in by the Circuit Judge, and this court has repeatedly held that such findings will not be reversed, unless there was no evidence to support them, or where the same are against the manifest weight of testimony. *Meinhard Bros. & Co.* v. *Strickland,* 29 S. C., 498. We have examined the testimony in the court below with care, because the zeal and ability of counsel for the judgment creditors have impressed us ; and besides, this belongs to that class of cases—dealings of husband and wife with each other—that ought always to enlist a very careful scrutiny by the courts of the country.

At the outset it must be observed that the dealings between the plaintiff and her husband occurred at a period in our history when there was no law that interdicted a debtor from giving a preference to his creditor or creditors, for the statute of this State, whose provisions have become sections 2014, 2015, and 2016 of the General Statutes, was not enacted until after this mortgage was given. Hence the decisions of *Wilks* v. *Walker,* 22 S. C., 108, and *Meinhard Bros. & Co.* v. *Strickland, supra,* do not bear on this class of cases, for those cases just cited had reference to the true construction to be placed on the sections of the General Statutes just referred to. Appellants see the force of this position, and therefore they say, "Yet we understand the law of this State to have ever been that a Court of Equity will not lend its aid to a fraud"—and as to this proposition they are in the main correct. It would be monstrous that such a tribunal should lend its aid to those who so far forget what is due society in the aggregate, or the members of society as individuals, as to wallow in the mire of corruption as those do who commit *actual fraud ;* or to those, on the other hand, who pervert those principles of right and justice that are violated by *constructive* or *legal frauds.* It should be remembered that a good name is too precious in the eye of the law to be damned without proof. Where is the proof here of this charge ? Have the judgment creditors here introduced a scintilla of proof as to actual fraud ? Have they even shown the insolvency of Hairston to the court by the return of a *nulla bona* on a single execu-

tion ? It might be that the case at bar belongs to that class of cases where the law, and equity, too, would require that the judgment creditors should show, as the first step in their effort to open up these transactions, such diligence, to entitle them to charge insolvency upon the defendant Hairston, that they had exhausted their legal remedies to obtain satisfaction of their judgments. They alleged insolvency in their answers, but they adduce no proof to sustain such allegations, except the bare facts of the existence of their respective judgments. In addition, we see nothing in the testimony of the plaintiff's witnesses to establish this charge of fraud.

We cannot say, therefore, that the findings of the master or the Circuit Judge are without any testimony to support them, or that such findings are manifestly against the weight of the testimony adduced in the court below.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.